## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

Monserrate Vidro,
    Plaintiff,

    v.

United States,                                         No. 3:11cv1399 (SRU)
    Defendant.

### RULING AND ORDER ON MOTION TO DISMISS

Plaintiff Monserrate Vidro seeks damages for emotional distress he suffered when federal agents allegedly lied in a grand jury proceeding to secure Vidro's indictment. The government asserts two bases for dismissal of Vidro's suit. First, the government argues that Vidro's complaint should be narrowly construed to assert only a claim of false imprisonment, and since he has failed to plead sufficient facts to establish false imprisonment, his suit should be dismissed. Second, the government argues that a recent Supreme Court decision, *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), immunizes grand jury witnesses from tort liability that may arise from their testimony. Because the government correctly interprets *Rehberg* to protect grand jury witnesses from suits arising out of their testimony, plaintiff's claims should be dismissed, and I need not decide whether Vidro's complaint was limited to claims of false imprisonment.

### I.  STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the

1

court must accept the material facts alleged in the complaint as true, draw all reasonable

inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid

claim for relief.  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the

speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; see also

*Iqbal*, 129 S. Ct. at 1940 ("While legal conclusions can provide the framework of a complaint,

they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly*

and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through

more than "labels and conclusions, and a formulaic recitation of the elements of a cause of

action." *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage

is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it

strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very

remote and unlikely." *Id.* at 556 (quotation marks omitted).

"On a motion to dismiss, the court may consider any written instrument attached to the

complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon

which the complaint relies and which are integral to the complaint."  *Matson v. Bd. of Educ.*, 631

F.3d 57, 62 (2d Cir. 2011) (quotation omitted).

II.    BACKGROUND

In January 2009, a federal grand jury indicted Vidro on drug sale charges. Vidro was

remanded to federal prison for the first several months of his case. On April 22, he reapplied for

bond, and Judge Fitzsimmons granted the motion. In May, the government dropped the charges

against him. Vidro's suit seeks damages for the emotional distress he suffered while incarcerated, and for income he lost due to his time away from work.

The government offered no explanation for terminating the prosecution, but Vidro claims to know the reason for the government's reversal— prosecutors discovered that their case was based entirely on false testimony. Two law enforcement agents testified before the grand jury. They accused Vidro of working with a large drug ring, and stated that they had heard Vidro discuss cocaine sales during taped phone conversations.  According to Vidro, the agents made-up the entire story: They had no basis to believe that Vidro belonged to a gang, nor had they ever heard Vidro discuss any plans to traffic drugs.

After his case closed, Vidro filed an administrative claim under the Federal Tort Claims Act ("FTCA") seeking money damages for harms caused by the agents. According to the administrative complaint, he "suffered wrongful imprisonment and resulting severe emotional distress and loss of his business and other economic losses all caused by the false imprisonment." The FBI denied his claim for relief, and Vidro timely filed a complaint in federal court.

III.    DISCUSSION

In *Rehberg v. Paulk*, the Supreme Court held that witnesses in a grand jury proceeding are absolutely immune from liability for any constitutional violations that might arise from their testimony. 132 S. Ct. 1497 (Apr. 2, 2012). According to the Court, to hold otherwise would expose witnesses to "retaliatory litigation," and future witnesses might then "deprive the tribunal of critical evidence." *Id.* at 1505. The *Rehberg* decision broke no new ground; it extended existing immunity for trial witnesses to witnesses testifying before a grand jury. *See Briscoe v. LaHue*, 460 U.S. 325, 342 (1983) (holding that immunity shields police officers who testify at trial from civil suit).  The *Rehberg* Court categorized grand jury witnesses' protection as a

"functional immunity." *Rehberg*, 132 S.Ct. at 1503. According to the court, testifying before a grand jury is a "governmental function . . . historically viewed as so important . . . that some form of absolute immunity from civil liability [is] needed." *Id.*

*Rehberg* only addressed actions brought under section 1983 for violations of constitutional law and its applicability to state law actions remains undecided. In this case, Vidro alleges that federal officers committed private torts against him in violation of Connecticut law, and he relies on the FTCA as the basis for waiving officers' sovereign immunity. This presents two separate questions— first, whether the FTCAs' waiver of sovereign immunity swept away traditional defenses like witnesses' protection from suit, and, second, whether Connecticut state law also shields grand jury witnesses from civil liability for their statements in court.

A.  The FTCA and Witnesses' Immunity

Under the FTCA, the United States assumes responsibility for government employees' torts. Though the United States replaces individual officers as the defendant in an FTCA suit, the statute preserves individual officers' affirmative defenses and allows the United States to assert them on its own behalf:

> With respect to any claim under this chapter, the United States shall be entitled to assert any defense based upon judicial or legislative immunity which otherwise would have been available to the employee of the United States whose act or omission gave rise to the claim.

28 U.S.C. § 2674. The government treats the scope of this clause as co-extensive with defenses to 1983. If an officer is shielded from liability for a constitutional tort, that immunity must also protect him from paying for private torts.

But the text of the FTCA is ambiguous: "judicial and legislative immunity" could be read in one of two ways. The phrase could refer simply to judges' and legislators' common law immunity from suit. Or, Congress could have intended to imply the word "created" into the

statute, so that it refers to all "judicial[ly] created" or "legislative[ly] created" immunity. The latter reading would accord with the government's interpretation, while the former would not. Few courts have interpreted this provision of the FTCA, and published opinions focus on judicial officers' immunity from suit, and thus, they do not confront the two potential interpretations. *See, e.g.*, *Ajaj v. MacKechnie*, 2008 WL 3166659 (S.D.N.Y. Aug. 4, 2008) (holding that a clerk was immune from tort liability under common-law doctrine of judicial immunity). Without further guidance from the text, a court may resolve ambiguities by turning to legislative history. *Canada Life Assurance Co. v. Converium Ruckversicherung*, 335 F.3d 52, 57 (2d Cir. 2003). And here, the legislative history of section 2674 suggests that Congress intended the clause to preserve all common law protections for officers, not just those that shield members of the legislative and judicial branches.

Congress passed section 2674 in the wake of the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292 (1988). In *Westfall*, the Supreme Court held that federal employees were only immune from torts that resulted from their discretionary decisions, not from accidents that resulted from the negligent performance of ministerial tasks. *Id.* In response, Congress passed the Westfall Act, which made federal employees absolutely immune from responsibility from any torts that occurred while they acted within the scope of their employment. Section 2674 was part of that Act.

The Westfall Act must have been a product of a rare moment of Congressional unity—the Act seems to have passed without much opposition or controversy. The Senate Judiciary Committee never produced a report on the proposed law. *See* H.R. REP. NO. 100-700 at 5945 (1988).  The only record explaining the law's meaning is the House Judiciary Committee's unanimous report detailing the purpose of each section of the Act. The House Committee

underscored that section 2674's reference to "judicial and legislative immunities" preserved all common-law defenses, and it was not intended to cherry-pick a limited set of protections for preservation: "Section 4 specifically preserves the traditional immunities that have long protected the key functions of the legislative and judicial branches of the government. . . However, the specific designation of these immunities does not imply that traditional common law defenses are not available." Thus, at least according to Congress, "the United States would also be able to continue to assert other functional immunities, such as Presidential and prosecutorial immunity, recognized in the constitution and judicial decisions." H.R. REP. NO. 100-700 at 5948. Read against this background, the statute preserves defenses like the one in *Rehberg*: a "functional" immunity designed to encourage witnesses to speak freely without fear of reprisal. *Rehberg*, 132 S. Ct. at 1503.

2. <u>Connecticut Common Law and Witnesses' Immunity</u>

Under the FTCA, courts look to state law to determine the elements of a cause of action and any common law defenses to it. *Castellano v. Fragozo*, 352 F.3d 939, 954 (5th Cir. 2003). Thus, even if the FTCA preserves common law defenses, a defendant may only benefit from the defense if the state recognizes it as a matter of state law.

Connecticut has long had a capacious protection for witnesses in court proceedings. In *Petyan v. Ellis*, the Court reiterated that Connecticut recognized "the common law protection of absolute privilege for communications or testimony elicited in connection with and pertinent to an ongoing judicial or quasi-judicial proceeding." 200 Conn. 243, 252 (Conn. 1986). Since then, courts have applied this protection to testimony in a range of proceedings, including statements made during an internal affairs investigation, *Craig v. Stafford Construction*, 271 Conn. 78, 93 (Conn. 2004), and a hearing to commit someone to a mental institution, *Hopkins v. Connor*, 282

6

Conn. 821, 831 (Conn. 2007).

Indeed, the Connecticut Supreme Court has crafted only one exception to *Petyan*: witnesses giving a statement to police are only entitled to qualified immunity, not absolute immunity. *Gallo v. Barile*, 284 Conn. 459, 468 (Conn. 2007). In *Gallo*, the court held that statements made to the police were too far removed from a judicial proceeding to warrant absolute protection. *Id.* at 471. But as the United States Supreme Court noted in *Rehberg*, no similar concern exists in the context of a grand jury proceeding: as the Court recounted, the term "witness" in the phrase "complaining witness" is a misnomer. The term was first coined to refer to a person who initiated a criminal prosecution, even if that person never testified before any tribunal in the future. *Rehberg*, 132 S. Ct. at 1507. Not so for a witness making accusations before a grand jury. A grand jury witness has been called (and often subpoenaed) to the court by a prosecutor, and compelled to recount facts that give rise to criminal charges. Thus, a witness addressing a grand jury is in the same position as a witness at a trial: The public has an interest in ensuring that they speak freely, and the witness is deterred from lying by the criminal penalty of perjury.

Though *Rehberg* does not control here – the decision came down last April, and the Connecticut Supreme Court has not had occasion to address its applicability to Connecticut law—its logic is persuasive. And it points in one direction. A grand jury hearing is the kind of "ongoing judicial or quasi-judicial proceeding" that the *Petyan* court deemed worthy of protection.  Witnesses must feel confident that they can honestly recount the details of an alleged crime without fearing that their words will subject them to a future lawsuit.  Connecticut law has long granted witnesses that assurance, and United States may assert its employees' right to it in

this case.[1]

IV.    <u>CONCLUSION</u>

The defendant is immune from Vidro's suit. The FTCA preserved all common law immunity defenses traditionally available to federal officials. Under Connecticut law, witnesses in judicial proceedings are immune from suit. For these reasons, and the reasons set forth above, Vidro's suit is dismissed.

It is so ordered.

The clerk is directed to close this file.

Dated at Bridgeport, Connecticut, this 26th day of September 2012.

<u>/s/ Stefan R. Underhill</u>
Stefan R. Underhill
United States District Judge

---

[1] It is unclear from plaintiff's complaint whether officer Juan Gonzalez was acting in his capacity as a federal officer working for the FBI's task force, or whether he was acting in his capacity as a local official working for the Bridgeport police. I have jurisdiction to hear either case: the FTCA empowers federal courts to hear tort claims against federal officers, 28 U.S.C. § 1346, and if Gonzalez was working as an FBI agent, I have original jurisdiction to decide a case filed against him. If he was working as a local officer, I have supplemental jurisdiction over the case because his co-defendant, Joshua Farlow, is a full time FBI agent, and I have original jurisdiction over Farlow's case. 28 U.S.C. § 1367. Whatever my source of jurisdiction, my decision is the same:  Gonzalez enjoys immunity under Connecticut law and the state law claims against him—or against the United States— should be dismissed.

8